**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

— 2 2006

CLERK, U.S. DISTRICT COURT
By _____

| | |
|---|---|
| DIANE REED, *Trustee* § | |
| § | |
| Appellant, § | |
| § | |
| v. § | |
| § | |
| THE UNITED STATES, *Internal Revenue* § | Civil Action No. 3:05-CV-1836-M |
| *Service,* § | |
| Appellee, § | |
| § | |
| v. § | |
| § | |
| BIO-MED SERVICES CORPORATION, § | |
| § | |
| Debtor. § | |

## MEMORANDUM OPINION AND ORDER

Diane Reed, Trustee, on behalf of Debtor Bio-Med Services Corporation ("Bio-Med") appeals from the Bankruptcy Court's final judgment in favor of the Internal Revenue Service, contending that the Bankruptcy Court erred in determining that losses incurred in the sale of certain real property of Bio-Med (herein called "the Real Property")[1] should be treated for tax purposes as capital losses rather than ordinary losses.[2] For the reasons stated below, the Court AFFIRMS the judgment of the Bankruptcy Court.

---

[1] The Real Property is comprised of the: (1) Fall Creek/Henslee property; (2) Wal-Mart property; (3) Auto House property; and (4) Bentwater property.

[2] A capital gain/loss results from the sale of a capital asset, and an ordinary gain/loss results from the sale of a noncapital asset. The Internal Revenue Code defines a capital asset as "property held by the taxpayer," not including "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Internal Revenue Code § 1221.

1

*Standard of Review*

This Court reviews the Bankruptcy Court's conclusions of law *de novo* and its factual findings only for clear error. *In re Nary*, 253 B.R. 752, 756 (N.D. Tex. 2000) (quoting *In re ICH Corp.*, 230 B.R. 88, 91 n.10 (N.D. Tex. 1999)). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Biesel v. Billings*, No. 3:01-CV-2284-D, 2002 U.S. Dist. LEXIS 7357, at *21 (N.D. Tex. Apr. 24, 2002) (quoting *Johnson Southwest v. Harbert Energy Corp. (In re Johnson Southwest)*, 205 B.R. 823, 827 (N.D. Tex. 1997)). The test as to whether a finding of fact is clearly erroneous is whether it is plausible in the light of the record read as a whole. *G.H. Leidenheimer Baking Co., Ltd. v. Sharp*, 439 F.3d 233, 2006 U.S. App. LEXIS 2826, at *5 (5th Cir. Feb. 6, 2006) (quotation omitted) (citing *Baker Hughes Oilfield Operations, Inc. v. Cage*, 416 F.3d 394, 402 (5th Cir. 2005)). This Court cannot consider the evidence differently simply because it chooses to do so. *Biesel*, 2002 U.S. Dist. LEXIS 7357, at *21.

*Factual Background*

Bio-Med's primary business was the transportation of medical specimen between doctors' offices and laboratories. On July 7, 2000, Bio-Med filed for Chapter 11 bankruptcy protection, and Diane Reed was appointed its Trustee. On November 30, 2000, Bio-Med's case was converted to a Chapter 7 proceeding, and Reed became its Chapter 7 Trustee.

On December 18, 2000, the Trustee brought suit against Phillip and Bonnie Shaffer ("the Shaffers") alleging that the Shaffers had misappropriated Bio-Med funds. The suit sought money

or property to satisfy the claim. On January 16, 2001, the Trustee filed a Motion to compromise the controversy with the Shaffers. The Motion was granted and as a result, on or about February 23, 2001, the Shaffers transferred the Real Property to the Debtor's Estate in partial satisfaction of the Estate's claims against the Shaffers.

Over the course of approximately two years, the Trustee sold the Real Property in separate transactions.

*Tax Liability*

The Trustee filed 2001 and 2002 tax returns on behalf of the Estate, claiming ordinary losses on the sales of the Real Property. The IRS audited the 2002 return, and determined that $377,728 of the total losses claimed on the return for the Trustee's 2002 sales of the Real Property were capital losses, rather than ordinary losses, and thus could be used only to offset any capital gains that occurred in previous tax years.

The significance of the classification of the loss is that if the losses are ordinary, rather than capital, the IRS will receive no payment on its priority claim and will be required to make a refund to the Estate for the 1999 tax year. Alternatively, if the losses are capital losses, no refund will be owed to the Estate for 1999 and the IRS will retain a priority claim against the Estate.

*Issue on Appeal*

The Appellant argues that the losses on the Real Property sales should be classified as ordinary, because the sales occurred in the normal course of business. The Appellant makes a distinction between Bio-Med's pre-petition business and its post-petition business, urging the

Court to look to the business the taxpayer was engaged in when the Real Property was acquired, held, and sold. The Appellant contends that at the time the property was acquired and sold, the Debtor had "ceased all regular business activities" and was in the business of liquidating assets for the benefit of creditors, through the Trustee. The Appellant also maintains that the Real Property was acquired by the Trustee from the Shaffers after Bio-Med filed for bankruptcy "solely for the purpose of liquidation for the benefit of all creditors." The Appellant stresses that "at no time did the trustee acquire or hold the property for investment as a capital asset."

The Appellee, the IRS, responds that the business of the Debtor was the transportation of medical specimen. It notes that the Trustee had reported on the tax returns she filed that the business of the Debtor was "transportation." The Appellee also notes that the Bankruptcy Court never authorized the Trustee to change the nature of the Debtor's business or to operate Bio-Med as a real estate or liquidation company. Therefore, the IRS contends that because the Debtor was never formally in the business of real estate sales, the Real Property constitutes capital assets, the sale of which yielded capital losses.[3]

*Analysis*

To determine whether the losses were capital or ordinary, the Bankruptcy Court analyzed the three questions discussed in *Suburban Realty Co. v. United States*, 615 F.2d 171, 178 (5th Cir. 1980):

1) Was the taxpayer engaged in a trade or business, and if so, what business?

2) Was the taxpayer holding the property primarily for sale in that business?

---

[3] *See* Internal Revenue Code § 1221(a).

3) Were the sales contemplated by the taxpayer "ordinary" in the course of that business?

Suburban Realty Company had sold six tracts of unimproved real estate in five transactions between 1968 and 1971. The company reported on its tax returns profits from those sales as ordinary income. Later, Suburban Realty filed a claim for refund, arguing that the proceeds of the sales of those six tracts were entitled to capital gains treatment. The District Court determined that the income derived from the real estate sales was subject to ordinary income treatment, and the Court of Appeals affirmed.[4]

Here, the Bankruptcy Court determined that the Debtor was never in the business of selling real property. It held that the Trustee "stands in the shoes of Bio-Med" and "because the Debtor was not in the business of selling real property, the Trustee really can be in no other position than the Debtor." The Court concluded that the Real Property sales should be treated as generating capital losses rather than ordinary losses, and thus granted the Motion for Summary Judgment of the IRS.

Neither party disputes the use of *Suburban Realty* as establishing the criteria by which this Court should examine the issues in this case. However, the Appellant argues that the *Suburban Realty* standards were misapplied when the Bankruptcy Court failed to acknowledge the unique circumstances of this case. The Appellant contends the Debtor was in the business of liquidation when the Real Property was acquired and sold, and urges that this situation is unique because the Real Property was acquired after the Debtor filed for bankruptcy, when the Debtor had ceased its pre-petition business and was engaged, through the Trustee, only in the business of

---

[4] In *Suburban Realty*, the taxpayer argued for capital treatment where a gain would be taxed at a lower rate. Here, the Trustee is arguing for ordinary loss, because that eliminates more tax liability.

liquidating assets for the benefit of its creditors. The Appellant also urges that the Fifth Circuit has "made clear that past business practices are not conclusive" in resolving this question. *Suburban Realty*, 615 F.2d at 183-84. In response to the second question posed in *Suburban Realty*, the Trustee claims that the inquiry about the purpose for the holding of the Real Property should be considered as of the date the Real Property was acquired. Because the Real Property was acquired after the bankruptcy and held for the purpose of liquidation, the Trustee argues it was not a capital asset. She also claims that a demonstrated intent to resell an asset immediately following its purchase precludes the asset from being characterized as an investment. *E. Dean Morley and Merry Morley v. Commissioner of Internal Revenue*, 87 T.C. 1206, 1211-1212 (1986). The Trustee contends that once these factors are taken into consideration, the totality of the circumstances support the conclusion that the losses from the sale of the Real Property should be characterized as ordinary losses.

The first question posed by *Suburban Realty* is critical. If the taxpayer is found to be in a business unrelated to real estate sales, the second and third questions become moot. In evaluating the first question, the Bankruptcy Court determined that the Debtor was not in the business of selling real property.

In order for the loss from the sales of the Real Property to be given ordinary treatment, the debtor had to be in some type of business in which the sales would have occurred in the ordinary course of that business. Whether an entity is involved in a particular type of business is a factual determination, to be reversed only if clearly erroneous. *Richard H. and Patsy J. Bramblett v. Commissioner of Internal Revenue*, 960 F.2d 526, 530 (5th Cir. 1992) (citing *Byram v. United States*, 705 F.2d 1418, 1423-24 (5th Cir. 1983)).

The overarching consideration in this case is whether or not the Appellant had the authority to operate or alter the nature of the Debtor's pre-petition business. One of the requirements of a Chapter 7 liquidation is that the trustee obtain the Court's authorization prior to operating a debtor's business. 11 U.S.C. § 721. Absent a Court Order permitting the continuation or expansion of a debtor's business, a trustee is not authorized to unilaterally change the nature of the business. In this case, were liquidation to be construed as a business, every Chapter 7 case would involve a debtor in that business. No such authorization was sought or given.

Chapter 7 debtors surrender their assets to the Trustee after filing for bankruptcy protection and are not authorized to sell the assets of the bankruptcy estate. 11 U.S.C. § 521. The Bankruptcy Code authorizes the Trustees to sell the property, with the Court's permission. 11 U.S.C. § 363. Working with the Trustee to liquidate assets does not constitute a new business for the Debtor.

The Court concludes the Debtor's business remained its pre-petition business of medical specimen transportation. The Real Property sales were not in the ordinary course of that business. Therefore, the proceeds from those sales should be given capital treatment for tax purposes, as the Bankruptcy Court determined.

*Conclusion*

The Court AFFIRMS the judgment of the Bankruptcy Court.

**SO ORDERED.**

**DATED:** May 2, 2006

_____
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

8